UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| KAREN SAVINI, et al., ) | |
| ) | |
| Plaintiffs ) | |
| ) | |
| v. ) | |
| ) | |
| ASHLAND, INC. (d/b/a Ashland Chemical ) | |
| Company, d/b/a Ashland Specialty Chemical ) | |
| Company, d/b/a Ashland Distribution ) | Civil Action No. 11-cv-12277-DJC |
| Company), ) | |
| ) | |
| Defendant/Third-Party Plaintiff ) | |
| ) | |
| v. ) | |
| ) | |
| C.A.I., INC., ) | |
| ) | |
| Third-Party Defendant. ) | |

MEMORANDUM AND ORDER

CASPER, J.                                                                                    September 16, 2013

I.      Introduction

C.A.I.[1] moves for reconsideration of the portion of the Court's March 26, 2013

Memorandum and Order (the "March Order"), D. 59,  denying its motion to dismiss the Savini

Plaintiffs' counterclaim and granting in part the Savini Plaintiffs' cross-motion for judgment on

the pleadings as to their counterclaims against C.A.I.  D. 62.  In the March Order, the Court held

that the Savini Plaintiffs' counterclaims for declaratory judgment that they are relieved from any

indemnity obligations pursuant to the Settlement Agreement (Count I), breach of the Settlement

Agreement (Count II) and violation of Mass. Gen. L. c. 93A (Count III) did not fall within the

scope of the release provision of the Settlement Agreement and declined to dismiss the

[1] All defined terms will have the meaning ascribed to them in the March Order.

counterclaims on that basis.  March Order at 35–36.  The Court also held that C.A.I. waived its right to indemnification by refusing to permit the <u>Savini</u> Plaintiffs to defend it against Ashland's third-party complaint for indemnification and contribution and instead insisting that they simply reimburse C.A.I. for the defense costs C.A.I. incurs in the course of defending itself.  <u>Id.</u> at 36–40.  The Court will not rehash the factual and procedural background that was laid out in the March Order or the arguments made in the initial briefings.  For the reasons described below, the motion is GRANTED in part.

## II.     Discussion

### A.     <u>Standard of Review</u>

"While the Federal Rules do not provide for a motion to reconsider, a district court has the inherent power to reconsider its interlocutory orders . . . ."  <u>Fernández-Vargas v. Pfizer</u>, 522 F.3d 55, 61 n.2 (1st Cir. 2008) (internal quotation marks omitted); <u>see also</u> <u>Pérez–Ruiz v. Crespo–Guillén</u>, 25 F.3d 40, 42 (1st Cir.1994) (noting that "interlocutory orders . . . remain open to trial court reconsideration, and do not constitute the law of the case").  However, "[m]otions for reconsideration are not to be used as a vehicle for a party to advance arguments that could and should have been presented to the district court prior to its original ruling."  <u>Villanueva v. United States</u>, 662 F.3d 124, 128 (1st Cir. 2011).  "Instead, motions for reconsideration are appropriate only in a limited number of circumstances:  if the moving party presents newly discovered evidence, if there has been an intervening change in the law, or if the movant can demonstrate that the original decision was based on a manifest error of law or was clearly unjust."  <u>United States v. Allen</u>, 573 F.3d 42, 53 (1st Cir. 2009); <u>see also</u> <u>Villanueva</u>, 662 F.3d at 128 (noting that "[r]econsideration may be proper where the movant shows a manifest error of law or newly discovered evidence, or where the district court has misunderstood a party or made

an error of apprehension").  Although motions for reconsideration may be rarely granted, see Storie v. Household Int'l, Inc., No. 03-40268-FDS, 2005 WL 3728718, at *3 (D. Mass. Sept. 22, 2005), this Court, after further deliberation, further development of the arguments by counsel and its further review of the record, determines that this is such rare instance where granting the motion to reconsider, at least in part, is necessary to correct an error and avoid an unjust result.

      **B.**     **Analysis**

      C.A.I. contends that "the Court's decision was incorrect as a matter of law and manifestly unjust" and requests that the Court reconsider its rulings and allow C.A.I.'s motion to dismiss and deny the Savini Plaintiffs' motion for judgment on the pleadings.  D. 63 at 2.[2]  In its motion for reconsideration, C.A.I. argues that the Savini Plaintiffs initiated claims against Ashland as early as November 2008 and no later than February 2009 ("long before the filing of the instant case in December 2011") and therefore, the Savini Plaintiffs' indemnity obligation extends back to July 2009 and they failed to undertake the duty to defend and not that C.A.I. refused to have them defend or waived its right to have them do so.  D. 63 at 4–8.  Specifically, C.A.I. centers its arguments around correspondence among Ashland, C.A.I. and the Savini Plaintiffs that was initiated by the Savini Plaintiffs in November 2008.  D. 63 at 4–5, D. 72 at 1–4.

      Certain correspondence among the parties beginning in November 2008 was attached to C.A.I.'s and the Savini Plaintiffs' counterclaims and was before the Court at the time of the March Order, see D. 59 at 33-34, including letters dated November 19, 2008, February 11, 2009, April 16, 2012 and April 17, 2012.  D. 24-3 (the November 19, 2008 letter), D. 24-4 (the February 11, 2009 letter), D. 25-1 (the April 16, 2012 letter), D. 25-3 (the April 17, 2012 letter), D. 30 at 6.  C.A.I., in its motion to dismiss, referenced giving notice to the Savini Plaintiffs beginning in July 2009 that it intended to seek indemnification from them, however, the crux of

---

[2] Unless otherwise noted, all citations to the docket are to the Savini docket.

C.A.I.'s argument initially was first, that the <u>Savini</u> Plaintiffs' counterclaims were released by the Settlement Agreement and second, that this is not the "classic indemnification scenario" and therefore C.A.I. did not have to relinquish its own defense.  D. 30 at 5–8.  The record has been supplemented with the July and November 2009 letters.  C.A.I. asks the Court to reconsider to focus on the entire timeline of events discussed below.  D. 63 at 6–7.[3]

To grant the <u>Savini</u> Plaintiffs' motion for judgment on the pleadings, this Court, when viewing the properly considered facts, namely the facts alleged in the counterclaims (or documents fairly incorporated therein or matters of which the Court may appropriately take judicial notice) must conclude that such allegations conclusively establish their entitlement to judgment at this stage.  <u>Patrick v. Rivera-Lopez,</u> 708 F.3d 15, 18 (1st Cir. 2013).  In pertinent part in the counterclaim, the <u>Savini</u> Plaintiffs allege that C.A.I. began to defend itself by filing an answer to Ashland's third-party complaint in the <u>Savini</u> matter and a counterclaim against them (D. 25 ¶¶ 38-39); the <u>Savini</u> Plaintiffs on April 17, 2012 informed C.A.I.'s counsel of its intent to defend C.A.I., but that, in response, C.A.I. had refused to yield to the <u>Savini</u> plaintiffs in defending itself in the <u>Savini</u> case.  (D. 25 ¶¶ 40-43).  They further allege that C.A.I. materially breached the indemnity provision between the parties and C.A.I.'s conduct wrongfully interfered with the <u>Savini</u> Plaintiffs' ability to defend the company against Ashland, (D. 25 ¶¶ 44-45), and accordingly, the <u>Savini</u> Plaintiffs seek a declaratory judgment "declaring that Plaintiffs are relieved from any Indemnity obligations to C.A.I. under the <u>Borelli</u> indemnity" (Count I) and

---

[3] C.A.I. also reiterates its argument that the <u>Savini</u> Plaintiffs' counterclaims were released by the release provision in the Settlement Agreement and therefore the claims should have been dismissed.  D. 63 at 9 n.3.  This issue was squarely addressed in the March Order and C.A.I. has not shown that the Court's decision was a manifest error of law.  Accordingly, the Court denies the motion for reconsideration on this issue for the reasons set forth in the March Order.

damages arising out of C.A.I.'s breach of "its Indemnitee duties under the <u>Borelli</u> indemnity to the detriment of [the <u>Savini</u> Plaintiffs]." (Count II).[4]

Although C.A.I. has introduced a record of communications between C.A.I. and counsel for the <u>Savini</u> plaintiffs that contradict (or at least show as incomplete) the timeline of C.A.I.'s notice of claims as alleged by the <u>Savini</u> Plaintiffs in the counterclaims, there are certain facts relating to the filing and procedural posture of the <u>Riva</u> and <u>Savini</u> cases, of which this Court may take judicial notice that show that, at least, the <u>Savini</u> Plaintiffs should not be entitled to judgment on the pleadings for its counterclaims.

The <u>Riva</u> action, in which this Court has now denied class certification, was filed in Essex Superior Court on November 16, 2009 and removed to this Court on December 4, 2009. The <u>Savini</u> Plaintiffs' argument that the December 2011 <u>Savini</u> action is the only action that the <u>Savini</u> Plaintiffs "brought" (thereby not triggering its duty to defend until after the filing of the Savini action on December 19, 2011) fails to consider the <u>Savini</u> Plaintiffs' involvement in the <u>Riva</u> putative class action, which was filed on November 16, 2009.  The <u>Savini</u> Plaintiffs were part of the purported class in <u>Riva</u>.  As the Court previously acknowledged in its Memorandum and Order denying class certification, the proposed class consisted of those who allegedly suffered damages as a result of the November 2006 explosion purportedly caused by Ashland's misconduct and therefore included the <u>Savini</u> Plaintiffs who are Trust beneficiaries.  <u>Riva</u>, D. 73 at 12.  The Court should not, as C.A.I. suggests it did implicitly in the March Order, separate <u>Riva</u> from <u>Savini</u> for purposes of the indemnification provision in the Settlement Agreement because less than a week after the Court denied class certification in <u>Riva</u> on December 13, 2011, the <u>Savini</u> action was filed on behalf of a subset of the purported class in <u>Riva</u>. D. 1.  The <u>Savini</u>

---

[4] This Court does not revisit its ruling in the March Order dismissing Count III of the counterclaim (Mass. Gen. L. 93A claim).

Plaintiffs argue that the indemnity obligation in the <u>Borelli</u> Settlement Agreement could only be triggered by "actions" brought by the <u>Savini</u> Plaintiffs.  D. 74 at 6.  The Settlement Agreement requires the Trust beneficiaries to "defend, hold harmless and indemnify" C.A.I. from "third-party claims for indemnity or contribution which might be brought by [Ashland] against whom actions are brought by any individual Indemnitor."  Settlement Agreement § 5.  According to the plaintiffs, the <u>Savini</u> action is "the only action that the [<u>Savini</u> Plaintiffs] have <u>brought</u> against Ashland."  D. 74 at 5 (emphasis in original).  However, the <u>Savini</u> Plaintiffs' relationship to the <u>Riva</u> action is one of which this Court can take judicial notice.  Where against this backdrop and reading the factual allegations in the counterclaim in the light most favorable to the C.A.I., it cannot be said conclusively that the filing of the <u>Savini</u> action was the juncture at which they "initiated (or subsequently joined in) the litigation or claim against the Non-Released Party which, in turn, caused the contribution or indemnity claim to be brought against the Released Party,"  Settlement Agreement § 5, given the earlier pendency of the <u>Riva</u> action.  Given these considerations alone, the Court cannot conclude (and should not have concluded) that the <u>Savini</u> Plaintiffs are entitled to judgment on the pleadings, even assuming the allegations in the pleadings to be true and considering the April 2012 correspondence incorporated within same and the facts of which the Court has taken judicial notice.

Having made this conclusion, and having confined itself to the facts alleged and incorporated in the pleading and the aforementioned judicially noticed facts, the Court now notes that C.A.I. has entered much in the record that, at a minimum, suggests that the <u>Savini</u> Plaintiffs were on notice of their duty to defend C.A.I. in the earlier, related litigation, and failed to do so.[5]

---

[5] First, although attorney Lagorio and other counsel filed the <u>Riva</u> putative class action, the aforementioned correspondence proffered by C.A.I. reflects that both attorneys Lagorio and Schlichtmann were involved in representing the Trust beneficiaries, now the <u>Savini</u> Plaintiffs, since November 2008 as they contemplated claims against Ashland.  <u>See</u> D. 72-1, D. 72-2.

Against this backdrop, C.A.I. argues that the <u>Savini</u> Plaintiffs initiated claims (as defined in the Settlement Agreement) against Ashland "as early as November 2008, and in any event no later than February 2009, long before the filing of the instant case in December 2011," and therefore their defense obligation was triggered in July 2009 when C.A.I. notified them of their obligations under the Settlement Agreement.  D. 63 at 5, 8.  It is C.A.I.'s position that after Lagorio and Schlichtmann received the July and November 2009 letters, Schlichtmann never offered to defend C.A.I. and Lagorio filed the <u>Riva</u> putative class action on November 16, 2009

Second, the record suggests that Schlichtmann had notice since July 2009 of C.A.I.'s intention to seek indemnification from the Trust beneficiaries if Ashland sought indemnification from C.A.I.  D. 72-4; <u>see</u> D. 72-1 at 1.  By February 11, 2009, Lagorio and Schlichtmann had sent a Mass. Gen. L. c. 93A ("Chapter 93A") demand letter to attorney Lawrence Cetrulo, counsel for Ashland, "on behalf of the Beneficiaries of the Danversport Trust . . . and the class of persons affected by the explosion certified by the Essex County Superior Court in [<u>Borrelli</u>]" (the "Claimants").  D. 72-2 at 1.  The Claimants demanded that Ashland compensate them for their loss and injury for a total amount of $29 million and invited Ashland to mediate the Claimants' demand.  D. 72-2 at 11.  On July 1, 2009, Cetrulo sent a letter to Paul Sartorelli, a representative of C.A.I., and put him on notice that Ashland, pursuant to the terms of the Sales Contracts between Ashland and C.A.I., "may seek indemnification from C.A.I." for "potential claims" that may be brought by the Claimants.  Ex. C, D. 73-3 at 2–3.

After Ashland's counsel contacted attorney Paul Needham, counsel for C.A.I., Needham notified Schlichtmann on July 28, 2009 that C.A.I. had "received a claim letter dated July 1, 2009 from Ashland Inc. . . . advising C.A.I. that claims [had] been made against Ashland Inc. by [Schlichtmann], purporting to represent the beneficiaries of the Danversport Trust and the class of persons certified by the Essex Superior Court in [<u>Borrelli</u>]" and that Ashland indicated that "it may seek indemnification from C.A.I. to include costs, expenses and legal fees incurred in opposing and defending [the] claim."  D. 72-4 at 1.  The letter also notified Schlichtmann, as representative of the Claimants, that "C.A.I. intends to seek indemnification from all trustees, beneficiaries and representatives of the Danversport Trust" pursuant to the Settlement Agreement.  D. 72-4 at 1.  The letter quoted the relevant provisions of the Settlement Agreement and stated that the "duty to defend includes the obligation to pay C.A.I. the legal fees and costs for attorneys of its own choosing" and that C.A.I already incurred legal fees since Ashland's July 1, 2009 notice.  D. 72-4 at 2.

Third, on November 25, 2009, after the <u>Riva</u> putative class action was filed, Needham wrote a letter to Lagorio (and sent a copy to Schlichtmann) notifying him that C.A.I. was advised by Ashland in July 2009 that "if Ashland was sued it would seek contractual indemnification from C.A.I. for all costs, legal fees, and judgments associated with claims made against it arising out of the explosion."  D. 72-5 at 1.

on behalf of "all persons and entities who sustained damages as a result of the [e]xplosion," thereby attempting to include the <u>Savini</u> Plaintiffs as proposed class members. <u>Riva</u>, D. 1-2 ¶ 8. Thus, C.A.I. argues that the <u>Savini</u> Plaintiffs "participated in or at the very least acquiesced in" the filing of the <u>Riva</u> action.  D. 63 at 6; <u>see also</u> D. 30 at 8 n.2.

However, putting aside C.A.I.'s reliance of documents not incorporated in the counterclaim, the Cetrulo Affidavit or any other documents, and relying solely upon the appropriately considered facts for a motion for judgment on the pleadings (namely, the allegations in the counterclaim, documents fairly incorporated therein or matters of which the Court may appropriately take judicial notice like the filing and procedural posture of the <u>Riva</u> and <u>Savini</u> cases), this Court cannot conclude that the <u>Savini</u> Plaintiffs are conclusively entitled to judgment at this stage on their counterclaims, <u>Patrick v. Rivera-Lopez,</u> 708 F.3d 15, 18 (1st Cir. 2013).  This refined analysis leads to the conclusion, at least in part, that C.A.I. urges.  It is widely recognized that a wrongful refusal to defend forfeits the corresponding right to control the defense.  <u>See, e.g.</u>, <u>Rhodes v. Chi. Ins. Co., a Div. of Interstate Nat. Corp.</u>, 719 F.2d 116, 120 (5th Cir. 1983) (noting that it is "well settled that once an insurer has breached its duty to defend, the insured is free to proceed as he sees fit, he may engage his own counsel and either settle or litigate at his option. . . . [h]aving forfeited its right to conduct the defense, the insurer is bound by settlement or judgment"); <u>NextG Networks, Inc. v. OneBeacon Am. Ins. Co.</u>, No. 11-CV-05318-RMW, 2012 WL 3017689, at *3 (N.D. Cal. July 23, 2012) (same); <u>Emhart Indus., Inc. v. Home Ins. Co.</u>, 515 F. Supp. 2d 228, 252 (D.R.I. 2007) (same); <u>Bennett v. St. Paul Fire & Marine Ins. Co.</u>, No. 04-CV-212-GN, 2006 WL 1313059, at *5 (D. Me. May 12, 2006) (noting that where an insurer accepted its duty to defend, it retained the right to control defense strategy); 14 Couch on Insurance § 202:4 (3d ed. 2005).  That is true even where the party with the duty to

defend reverses its previous position and attempts belatedly to assume the defense.  See, e.g., Kirby v. Hartford Cas. Ins. Co., No. 3-02CV-1616L, 2003 WL 23676809, at *2 (N.D. Tex. June 9, 2003); Holt v. Utica Mut. Ins. Co., 759 P.2d 623, 628–29 (Ariz. 1988); BellSouth Telecomms., Inc. v. Church & Tower of Fla., Inc., 930 So. 2d 668, 671–72 (Fla. Dist. Ct. App. 2006); Grube v. Daun, 496 N.W.2d 106, 124 (Wis. Ct. App. 1992).  Here, even taking the allegations made by the Savini Plaintiffs as true, the earlier pendency of the Riva action of which the Savini Plaintiffs were part of the purported class shows, at a minimum, that it cannot said that these plaintiffs conclusively are entitled to a declaratory judgment that they are relieved from their duty to defend C.A.I. or that they are entitled to damages against C.A.I.  Accordingly, this Court reverses its earlier ruling to the contrary in favor of the Savini Plaintiffs as to their motion for judgment on the pleadings.[6]

Although the Savini Plaintiffs are not entitled to judgment in their favor at this "embryonic stage," R.G. Financial Corp., 446 F.3d at 182, this Court cannot say that these counterclaims, as alleged, are so speculative that they fail to state a plausible claim against C.A.I. and should be dismissed.  Although the Court is aware of the course of correspondence that C.A.I. has proffered in support of its motion to dismiss (and, upon which this Court did not rely in resolving the motion for judgment on the pleadings), the Court cannot say that such documents form an undisputed record or that they are in the nature of materials of which the Court should take judicial notice.  Moreover, C.A.I. has not moved for summary judgment and, in the absence of "reasonable" notice to the Savini Plaintiffs of any intent on the Court's part to treat it as such a motion, Fed. R. Civ. P. 12(d), the Court declines to treat it as such at this

---

[6] Given this ruling, the Court need not address C.A.I.'s additional arguments regarding circularity, D. 63 at 7, or that attorney Schlichtmann is foreclosed, as a matter of conflict of interest, from representing C.A.I. pursuant to Rule 1.7 of the Massachusetts Rules of Professional Conduct, D. 72 at 4–5.

juncture.   Accordingly, the Court's ruling DENYING the C.A.I.'s motion to dismiss the counterclaims will stand.

**III.     Conclusion**

For the foregoing reasons, the Court GRANTS C.A.I.'s motion for reconsideration in part as to the aforementioned portion of the March Order addressing the <u>Savini</u> Plaintiffs' counterclaims, March Order at Section b, pp. 36-40, and the <u>Savini</u> Plaintiffs' motion for judgment on the pleadings is now DENIED as to all of its counterclaims (counts I to III), but C.A.I.'s motion to dismiss those counterclaims is still DENIED.

**So ordered.**

<u>/s/ Denise J. Casper</u>
United States District Judge